IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AUGUSTINE PENA-SILVA,

Petitioner,

No. 2:06-cv-02682 ALA HC

vs.

K. PROSPER, Warden, et al.,

Respondents.

ORDER

_________________________________/

**I**

Pending before the Court are Augustine Pena-Silva's ("Petitioner") "First Amended Petition for a Writ of Habeas Corpus" brought pursuant to 28 U.S.C. § 2254(a) (doc. 23), Respondent's Answer (doc. 31), and Petitioner's reply, which he labeled "Traverse" (doc. 35). Also before the Court is Petitioner's "Ex Parte Request for Extension of Time to File Amended Petition" (doc. 36). The caption of this document is misleading; the document itself asks for "a 30 day extension of to file his traverse, which was due on March 28, 2005, until April 28, 2008 and which is filed concurrently with this request." On February 28, 2008, the Court ordered Petitioner to file a traverse within thirty-five days. Petitioner's traverse was filed on April 25, 2008. It appears that Petitioner is requesting leave to file his traverse beyond the Court's deadline. That request is granted.

However, for the reasons stated below, Petitioner's application for habeas corpus relief is

denied.

**II**

Petitioner was arrested after he sold methamphetamine to a confidential informant working for the Sacramento Sheriff's Office. The informant first purchased methamphetamine from Petitioner on November 15, 2001, and again on December 5, 2001. Each time he used marked money.

After the December 5th purchase, Petitioner asked the informant when he would want more methamphetamine. Petitioner stated that he could get the informant all the methamphetamine he wanted. The informant then told Petitioner that he would be taking the methamphetamine to Utah. Petitioner offered to wrap the methamphetamine up and hide it in the informant's car.

On December 11, 2001, the informant drove a rental car to Petitioner's residence in Sacramento. Petitioner told informant that he would put the methamphetamine in the car and have it ready the following morning. Petitioner's brother took the informant home. Sometime thereafter, the informant called Petitioner to request two extra pounds of methamphetamine. Petitioner told the informant that he had to find the additional methamphetamine, and that as a result, the car would not be ready until 3 p.m. on December 12, 2001.

On December 12, Petitioner's co-defendants, Pablo Aguiano Cortez, Macario Anguiano Salto, and Juan Manuel Anguiano, drove the rental car from Petitioner's residence to a home in Modesto. The car and its occupants then returned to Sacramento via Highway 99.

On the way back to Sacramento, the car was stopped for a traffic violation. A search uncovered 420 grams of methamphetamine. One of the car's occupants had $100 of the marked money given to Petitioner. A cell phone in the car had received six calls from Petitioner.

Around the time the car was searched, officers arrived at Petitioner's residence with a search warrant. Petitioner was arrested. Inside, officers found methamphetamine and objects used to prepare methamphetamine for sale.

The Modesto residence Petitioner's co-defendants stopped at was also searched. That

search revealed $20,900 (in cash), six pounds of methamphetamine, and three firearms.

On June 13, 2003, a jury in Sacramento County Superior Court found Petitioner guilty of selling methamphetamine, offering to sell methamphetamine, conspiring to transport methamphetamine from one county to a noncontiguous county, and possessing methamphetamine for sale. The jury also found the following facts: that Petitioner had prior convictions for manufacturing methamphetamine, that the methamphetamine he offered to sell and possessed exceeded one kilogram, that he was vicariously armed with a firearm in the commission of the conspiracy, and that he had served a prior prison term.

The trial court found additional facts in relation to the conspiracy conviction. As a result, it imposed an upper term sentence for that crime. The court noted that in selecting the upper term, it was following "Rule of Court 4.421." RT at 1884. The court indicated that the upper term was appropriate because:

> The manner in which the crimes were carried out indicates some planning, sophistication, some professionalism, as evidenced by use of coded language, counter-surveillance, cell phones, and as evidenced by large scale permanent illicit drug operation, scales, packaging materials, and cutting agents found in his home.
>
> This shows it to be an ongoing operation, involving many other participants in another county. There's no evidence this was like a one-time fluke that he was just caught in, caught up in because of a momentary lapse of judgment on his part. This defendant was a principal player, and he induced others to participate in the crime, that is, he placed the orders and got the whole operation going.
>
> Other facts relating to the defendant in aggravation are he's on parole when he committed these crimes.
>
> His prior convictions as an adult are numerous and of increasing seriousness.

RT 1884-85. Petitioner was sentenced to a term of imprisonment of twenty years and eight months.

Petitioner filed a direct appeal from the judgment in the California Court of Appeal for the Third District. The Court of Appeal affirmed the judgment and sentence.

Petitioner next filed a petition for review in the California Supreme Court. It was denied.

Petitioner filed a petition for writ of habeas corpus before the California Supreme Court. The petition was summarily denied on September 13, 2006. Where no state court provides a decision to support its denial of a state-filed habeas petition, a district court must conduct an independent review of the record to determine whether the denial was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

**IV**

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**A**

Petitioner first claims entitlement to habeas relief because the trial court used facts not found by the jury to impose a nine-year aggravated prison term on his conspiracy conviction. In support he cites *Cunnigham v. California*, 127 S. Ct. 856 (2007). In *Cunningham*, the Supreme Court addressed the constitutionality of California's determinate sentencing scheme ("DSL").

"The petitioner in *Cunningham* was convicted of 'continuous sexual abuse of a child under the age of 14.' That crime . . . was punishable under California law by a lower, middle, or upper term. Finding several aggravating factors, the judge imposed an upper term." *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. Cal. 2008) (quoting *Cunningham*, 127 S. Ct. at 860)). Under

applicable California law, the judge had to impose a middle term sentence "unless he found one or more aggravating factors." *id*.

As a result:

> In accord with *Blakely* [v. Washington, 542 U.S. 296 (2004)] , . . . the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, the DSL violates *Apprendi*'s[1] bright-line rule: Except for a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*id*. (quoting *Cunningham*, 127 S. Ct. at 868). The Court concluded that the California law "'violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments.'" *id*. (quoting *Cunningham*, 127 S. Ct. at 860).

**1**

Respondent contends that *Cunningham* does not apply retroactively to Petitioner's conviction because *Cunningham* created a new rule of law after Petitioner's conviction became final. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). *Cunningham* was decided on January 22, 2007. Petitioner's case became final on November 2, 2005, when the California Supreme Court denied his petition for review on direct appeal. *See* Cal. R. Ct. 29.4(b)(2)(A) (explaining that although most California Supreme Court decisions are final thirty days after filing, "the denial of a petition for review of a Court of Appeal decision" is final upon filing).

Respondent's argument is foreclosed by the Ninth Circuit's holding in *Butler v. Curry*, decided June 9, 2008. The Ninth Circuit held in *Butler* that "*Cunningham* . . . did not announce a new rule of constitutional law and may be applied retroactively on collateral review." 528

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000).

F.3d at 639.[2]

**2**

"[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham*, 127 S. Ct. at 863-64. However, "the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt." *Butler*, 528 F.3d at 641. Respondent claims that *Cunningham* does not require reversal because "the state court's decision to uphold Petitioner's upper term sentence was reasonable because the sentence was based on a finding stemming from Petitioner's prior convictions." Respondent explains that the judge's findings stemmed from Petitioner's prior convictions because "the trial court found that Petitioner had numerous prior criminal convictions and was on parole when he committed the crimes for which he was convicted." *Answer* at 19.

The trial court relied on the following factors to support the upper term sentence: (1) that "the manner in which the crimes were carried out indicates some planning, sophistication, some professionalism;" (2) Petitioner was "on parole when he committed these crimes;" and (3) "[h]is prior convictions as an adult are numerous and of increasing seriousness." The judge noted that he was selecting an upper term in accordance with California Rule of Court 4.423.

---

[2] On April 4, 2008, this Court ordered that "[i]f the parties learn of the existence of any authority that may have a material impact on the case before the Court *after* the parties' briefs have been filed, [they] must promptly advise the Court of that new authority." The Court is surprised that neither party filed a brief regarding *Butler*, which sheds new light on several of the dispositive issues in this case. Petitioner is not proceeding *pro se*, and his counsel should make efforts to stay abreast of recent developments that may aid her client. As for Respondent's counsel, *Butler* was argued by a branch of the same office that represents Respondent. One of the attorneys representing Respondent in this case represented the respondent in *DeFaria v. Marshall*, 2008 U.S. Dist. LEXIS 58269 (E.D. Cal. July 23, 2008), which cited *Butler* in stating that "[t]he Ninth Circuit recently has found that *Cunningham* did not create a new rule, and therefore can be applied retroactively on collateral review." There is no question that *Butler* defeats several of Respondent's arguments. Respondent's counsel was on notice of the *Butler* holding, and should have notified the Court of *Butler*'s importance.

Respondent does not contend that the finding that Petitioner's crime was carried out in a manner that indicates "planning, sophistication, some professionalism" should not be submitted to a jury; rather, it focuses on the trial court's findings regarding Petitioner's parole status and the number and severity of his prior convictions.

"[W]hether the defendant was on probation at the time of commitment of a crime does not come within the narrow . . . exception to the fact-finding requirements established in the *Apprendi* line of cases." *Butler*, 528 F.3d at 641. The Court explained that

> A probation term can therefore be terminated early, or be extended, or be revoked as a result of a probation violation. Such changes would not appear in the original conviction documents, as they would occur later.
>
> As a result, the fact that an individual was sentenced to a term of probation at the time of a prior conviction . . . is not sufficient to prove that he was on probation at the time of the current crime. That determination -- like the timing of a prior removal . . . can only be made by drawing inferences from the prior conviction documents and by considering facts and circumstances that occurred after the prior conviction.

*Id.* at 646.

Whether a petitioner is on parole at the time of an offense is committed is not the sort of fact evident from the face of original conviction documents. Rather, to determine whether someone is on parole requires the same kind of inference required to determine whether an individual is on probation at the time an offense is committed. Indeed, the California Penal Code provides that "[t]he parole authority shall consider the request of any inmate regarding the length of his or her parole and the conditions thereof." Cal. Pen. Code § 3000 (b)(4).[3] Also,

---

[3] Petitioner was on parole immediately after his incarceration in a California state prison. The probation report submitted to the trial court on July 13, 2003, states that on April 23, 1999, Petitioner was found guilty of violating "182(a) PC/11379.6 H&S/11378 H&S, 11378 H&S," and that he was sentenced to five years in California prison. Transcript on Appeal at 504-505. The report also notes that

> The defendant was released from State Prison on June 28, 2001, and he was released to US INS where he was deported to Mexico. The

> The Department of Corrections and Rehabilitation [is required to] meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority, the conditions of parole and the length of parole up to the maximum period of time provided by law. The inmate has the right to reconsideration of the length of parole and conditions thereof by the parole authority.

§ 3000 (b)(6). Therefore, the fact that Petitioner was on parole is also the kind of fact that should have been submitted to a jury.

The question becomes whether the trial judge's finding that Petitioner had numerous convictions of increasing seriousness violated *Cunningham*. *Butler*, 528 F.3d at 642 (citation omitted) ("under Supreme Court precedent, 'as long as a single aggravating circumstance . . . has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence . . . does not violate the defendant's right to jury trial.'").

A finding that Petitioner's prior convictions were serious is not the kind of finding that can be made by a trial judge. *See Butler*, 528 F.3d at 644 ("Under our precedents, the [prior conviction] exception does not extend to qualitative evaluations of the nature or seriousness of past crimes, because such determinations cannot be made solely by looking to the documents of conviction."). The Ninth Circuit has further narrowed the past convictions exception, explaining that "the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary 'facts that are derived or inferred' from a prior conviction or from the conviction documents." *id*. at 645.

Although it is an open question, Ninth Circuit precedent suggests that the fact that prior

---

> defendant had no contact with CDC until his arrest on the present offense which occurred on December 12, 2001. The defendant's parole agent placed a parole hold on the defendant based on the new offense on December 13, 2001.

*id*. at 506.

convictions were numerous is the sort of fact that must be found by a jury. *See Butler*, 528 F.3d at 645 ("the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary 'facts that are derived or inferred' from a prior conviction or from the conviction documents").

Therefore, all of the findings made by the trial court should have been submitted to the jury.

**3**

Under California law, "the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." *People v. Black*, 41 Cal. 4th 799, 815 (2007). However, the one aggravating circumstance must be "legally sufficient;" that is, it must have "been found to exist by the jury, . . . been admitted by the defendant, or [be] justified based upon the defendant's record of prior convictions." *id*. at 816. As a result, according to California law, Petitioner's sentence is invalid because no aggravating factor found by the judge was found in a legally sufficient manner.

However, this Court does not review the sentencing errors according to principles of California law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). This sort of error is subject to harmless error review. *United States v. Hollis*, 490 F.3d 1149, 1157 (9th Cir. 2007).

> Applying *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), we must determine whether 'the error had a substantial and injurious effect on [the] sentence.' Under that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'

*Butler*, 528 F.3d at 648 (citations omitted).

An *Apprendi* error is not harmless when a court is left with grave doubt "as to whether a jury would have found, beyond a reasonable doubt" that a particular fact was present. *Butler*, 528 F.3d at 651; *United States v. Locklin*, 530 F.3d 908, 912 (9th Cir. 2008) (explaining that an error that violated *Apprendi* was not harmless because " there was no evidence adduced at trial that would have supported a jury finding as to the charged underlying offense"). The inquiry changes slightly in the context of California's DSL system. "Any *Apprendi* error . . . will be harmless if it is not prejudicial as to just one of the aggravating factors at issue." *Butler*, 528 F.3d at 648 ("Under California law . . . only one aggravating factor is necessary to set the upper term as the maximum term.").

The trial court found that "[t]he manner in which the crimes were carried out indicates some planning, sophistication, some professionalism" because of the

> use of coded language, counter-surveillance, cell phones, and as evidence by large scale permanent illicit drug operation, scales, packaging materials, and cutting agents found in his home.
>
> This shows it to be an ongoing operation, involving many other participants in another county. There's no evidence this was like a one-time fluke that he was just caught in, caught up in because of a momentary lapse of judgment on his part. This defendant was a principal player, and he induced others to participate in the crime, that is, he placed the orders and got the whole operation going.

This finding was made pursuant to California Rules of Court, Rule 4.421(a)(8), which provides that circumstances in aggravation include that "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism."

In *People v. Dancer*, a California Court of Appeal explained the sort of evidence that supports a Rule 4.421(a)(8) finding. The defendant in *Dancer* was convicted of "five counts of lewd and lascivious conduct upon a child and one count of attempted lewd conduct." 45 Cal. App. 4th 1677, 1683 (Cal. App. 6th Dist. 1996), *overturned on other grounds by People v.*

*Hammon*, 15 Cal. 4th 1117 (1997). The defendant claimed error on several grounds, including that the sentencing court erred in imposing an aggravated sentence based on the fact that "the manner in which the crime was carried out indicates some planning, sophistication or professionalism evidenced by its repetition." *Id.* at 1693.

The Court of Appeal affirmed the sentence, concluding that the finding at issue was based on the fact that "the offense was planned and sophisticated, rather than a single spontaneous instance of aberrant behavior." The Court also noted that the finding was supported by evidence that

> defendant cultivated a trusting relationship with [the victim], played with her, got her used to playing in his garage, and then took advantage of her. Moreover, he did this on more than one occasion. Thus, the circumstances leading to the first offense plus its repetition thereafter indicate planning and sophistication, thereby making it worse than a sudden spontaneous act.

*Id.* at 1695.

Here, the trial court made similar findings that the crime in question was not a sudden spontaneous act. The findings are supported by the evidence presented to the jury. At trial, detailed testimony provided by Detective Christopher Joachim of the Sacramento Sheriff's Department described the criminal operation undertaken by Petitioner. Joachim testified that Petitioner was under surveillance during the Fall of 2001 for suspected sale and distribution of methamphetamine. RT 360. Jaochim stated that an informant purchased methamphetamine from Petitioner on November 15, 2001. RT 370-76. On December 5, 2001, Joachim directed the informant to once more make contact with Petitioner. RT 387. The informant returned to Petitioner's home that same day, and returned with methamphetamine sold to him by Petitioner. RT 395. On December 11, 2001, Jaochim again directed the informant to make contact with Petitioner and ask him if he could drop off a rental car at Petitioner's residence so that Petitioner could place methamphetamine in the car. The informant made contact with Petitioner. RT 404-

14. On December 12, 2001, the informant was directed to ask Petitioner for two extra pounds of methamphetamine (on December 11, 2001, only five pounds were requested). RT 412. The informant contacted Petitioner on that date.

On December 12, 2001, detectives entered Petitioner's residence armed with a search warrant. Detective Mike Jones seized methamphetamine from the bathroom and bedroom. RT 970. He also seized Ziploc baggies, green Saran wrap, a scale, and a pot. RT 971.

The Court is confident that a jury would have found, beyond a reasonable doubt, that Petitioner acted in a manner that evidence sophistication and planning. As a result, the imposition of the upper term sentence was justified, and any error was harmless.[4]

**B**

Petitioner also contends that his gun use enhancement conviction was not supported by sufficient evidence. The enhancement was the result of the jury's finding that a principal to the conspiracy used a firearm during the conspiracy in violation of California Penal Code § 12022(a)(1).

A federal habeas court reviews challenges to the sufficiency of the evidence by determining whether after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

Respondent frames the dispositive question as whether "there was sufficient evidence to

---

[4] Both parties represent the facts contained in the probation report presented to the trial court as the facts that were presented at trial. Nothing in the record suggests that the facts were the same. Indeed, at sentencing, Petitioner's trial counsel noted that the probation report "was obviously taken from the police reports in this case" and that some of the report was based on facts that did not come into evidence at trial. RT 1841.

show that the co-defendants in the Modesto house were principals in the conspiracy to transport the drugs." *Answer* at 30. This does not accurately describe the claims raised by Petitioner.

Petitioner raises two related arguments. First, he asserts that there was insufficient evidence to support the enhancement because "there was no evidence to prove that he [knew] that these guns, or the house they were found within, ever existed, nor were the weapons related to the conspiracy to transport the drugs." *Petition* at 7-8. Next, Petitioner contends that he was only charged with conspiracy to transport methamphetamine for sale between two counties, not conspiracy to possess methamphetamine. He alleges that he can only be vicariously liable for his co-conspirators' gun possession if he was part of the conspiracy to possess the drugs on top of the conspiracy to transport the drugs. Both of his arguments fail.

**1**

The evidence at trial did not establish that Petitioner himself was armed with a firearm during the conspiracy. However, "[a] person is . . . 'armed' with a firearm under subdivision (a), even though he or she did not personally have possession of a weapon, if his or her coprincipal was armed during commission of the offense." *People v. Smith*, 9 Cal. App. 4th 196, 204 (Cal. App. 5th Dist. 1992).

Petitioner asserts that knowledge is an element of vicarious liability necessary for the enhancement. He is incorrect. California Penal Code § 12022(a)(1) provides that

> any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless the arming is an element of that offense. ***This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm.***

(Emphasis added). "[T]here is no requirement an aider and abettor know any principal is armed with a firearm to be found vicariously armed under section 12022, subdivision (a)(1)." *People v.*

*Overten*, 28 Cal. App. 4th 1497, 1501 (Cal. App. 4th Dist. 1994). *Overten* is still good law, and defeats Petitioner's argument that knowledge is required.

**2**

Next, Petitioner's attempts to redefine the scope of the conspiracy with which he was charged. He contends that his co-conspirators were not armed "while committing the transportation offense." *Petition* at 9. That is, he contends that although he participated in a conspiracy to transport drugs, that conspiracy did not involve any firearms.

Petitioner wishes to pick and choose those acts that formed part of the conspiracy. In so doing, he ignores black-letter law.

> [P]roof of a conspiracy serves to impose criminal liability on all conspirators for crimes committed in furtherance of the conspiracy. Thus, where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine. In contemplation of law the act of one is the act of all.

*People v. Superior Court*, 58 Cal. App. 4th 833, 842-843 (Cal. App. 2d Dist. 1997) (internal quotation marks omitted).

Petitioner admits that he "may have been a principal in a conspiracy to 'transport' drugs." *Traverse* at 6. He also admits that firearms were found at the residence in Modesto his co-conspirators visited on December 12, 2001. *Id.* at 5. He further states that "[t]he firearms were all connected to the drugs found at the Modesto house." *Id*. at 6. He goes on: "[t]hese weapons were available for offensive or defensive use only as to the drugs found in Modesto." *Id*.

The drugs held at the Modesto house were part of the unlawful scheme to transport drugs. Petitioner himself admits that the firearms were placed in the Modesto house in order to protect the drugs. There is no question that the firearms were held in furtherance of the conspiracy with

which Petitioner was convicted.

Each of Petitioner's claims fail. Therefore, the state court's denial of his petition for habeas corpus was not "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

**THEREFORE, IT IS ORDERED** that Petitioner's First Amended Petition for a writ of habeas corpus (doc. 23) be **DENIED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent and close the case.

/////

DATED: September 2, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation